UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW HAMPSHIRE

<u>Christopher (Crystal) Beaulieu</u>

   v.                                                                      Case No. 19-cv-543-PB

<u>New Hampshire Department of Corrections,
Commissioner Helen E. Hanks et al.</u>[1]

**<u>REPORT AND RECOMMENDATION</u>**

Pro se plaintiff, Christopher (Crystal) Beaulieu, a transgender female inmate in the New Hampshire State Prison for Men ("NHSP"), has filed a complaint (Doc. No. 1) and four pleadings (Doc. Nos. 6, 7, 8, 18) that are construed as addenda to the complaint. The original complaint and those addenda are before this court for preliminary review, pursuant to 28 U.S.C. § 1915A and LR 4.3(d). Beaulieu has also filed a motion to amend (Doc. No. 6), a motion to correct/amend (Doc. No. 18), and two motions seeking preliminary injunctive relief (Doc. Nos. 7, 8), which have been referred to this magistrate judge for a

---

[1]This court construes the pleadings liberally as intending to name as defendants New Hampshire Department of Corrections ("DOC") Commissioner Helen Hanks; New Hampshire State Prison ("NHSP") Warden Michelle Edmark; NHSP Lt. Dupris or Dupuis (whose first name is unknown ("FNU")); NHSP Corrections Officer ("CO") E. Bazile; NHSP Sgt. Robert Parent; NHSP CO Josh Ellis; NHSP Capt. Daniel Boynton; NHSP Lt. Troy Fontaine; NHSP Lt. Benjamin Carver; NHSP CO FNU Seabron; NHSP Capt. Scott Marshall; and NHSP CO Christopher Berntsen or Bernstein; NHSP Maj. Jon Fouts; DOC Director of Safety and Security Christopher Kench; NHSP Cpl. FNU Eisman; NHSP CO FNU Oyiri; NHSP Cpl. Ryan Hyde; NHSP Lt. Phil Hill; and NHSP Cpl. FNU Susca.

report and recommendation ("R&R").  In addition, Beaulieu has filed notices of voluntary dismissal without prejudice under Fed. R. Civ. P. 41(a)(1), see Doc. Nos. 15, 16, 17, which have withdrawn the claims numbered in this R&R as Claims 1(a), 1(b), 2(b), 2(e), and 3(a)-(g).

## Background

I. Strip Searches

Beaulieu, who takes female hormones, has developed breasts, and she has asked prison officials to make sure that female guards conduct Beaulieu's strip searches from the waist up. Those requests have been denied.  A female CO told Beaulieu that female COs have not wanted to be involved in strip-searching transgender female inmates.

On June 19, 2018, NHSP corrections officer ("CO") Cpl. Ryan Hyde and Cpl. Lac ordered Beaulieu to strip for a search in an isolation cell in the Health Services Center.  Cpl. Hyde directed an unnamed CO to point a taser at Beaulieu to coerce her compliance with the search.  Beaulieu then stripped in front of the male officers, including Cpl. Hyde.

II. Endangerment

   A. September 20, 2018 Altercation

Beaulieu alleges that on September 20, 2018, when she was housed in the Residential Treatment Unit ("RTU"), inmate Kevin Smith threatened her, chased after her, and struck her on the side of her face, causing vision impairment, headaches, and a cut that required three stitches. Beaulieu, who alleges that she defended herself, further asserts that NHSP CO Seabron (the ward officer) was in the breakroom at the time of the assault; Cpl. Christopher Bernstein (a third shift officer) was "sleeping on the job," when, in full view of the "Bubble," Smith tried to smash Beaulieu's head against the floor; and Lt. Benjamin Carver was taking a "lap around the 2nd floor" when inmate Smith was "coming at her in a hostile manner." Beaulieu claims that each of those officers failed to attend to their duties and protect her despite knowing that she is a transgender inmate with feminine characteristics who requires extra protection, and that the RTU has a "history of violence." That incident resulted in Beaulieu's transfer to the Close Custody Unit ("CCU").

B. November 9, 2018 CCU Cell Placement

On November 9, 2018, the date of Beaulieu's arrival in the CCU, CCU CO Glenn Nimoriski and CCU Cpl. Josh Ellis were responsible for assigning Beaulieu to a cell. Those officers, who were both aware that, in the past, Beaulieu had requested

3

protective custody ("PC") status from an inmate gang known as the Brotherhood of White Warriors ("BOWW"), gave Beaulieu the option of either: (1) moving into a cell with BOWW member James Merchant on the CCU C-tier, or (2) seeking protective custody. When Beaulieu declined to seek PC status, the officers moved her into Merchant's cell, where she remained until officers moved her to a cell by herself on the CCU B-tier on November 29, 2018.

### C. December 5, 2018 Assault in CCU

On December 5, 2018, about one week after Beaulieu had been moved out of inmate Merchant's cell on C-tier, CCU CO Bazile released the lock on Beaulieu's cell door so that Beaulieu could enter the B-tier corridor to receive medication. Bazile was on the phone, Beaulieu alleges, and was not paying attention to which inmates were out of their cells at that time. Beaulieu left her cell and took a detour towards C-tier to mail a letter. Near the unit sergeant's office, Beaulieu encountered Merchant, who first asked, "Remember me?" and then punched and kicked Beaulieu four times in the face. Beaulieu asserts that the assault lasted several minutes, disfigured her nose, and caused her to have headaches and flashbacks. Beaulieu asserts that it took CCU officers Cpl. Eisman, CO Oyiri, and Lt. Dupuis almost five minutes to respond to her screams during that attack,

4

although they were in the nearby sergeant's office.  Beaulieu further alleges that those officers knew that she was vulnerable to inmate violence as a transgender sex offender with feminine characteristics who was known within the NHSP as a "snitch."

### D. June/July 2019 Housing Placement

Beaulieu alleges that she was transferred back to a general prison population unit, known as Medium Custody North ("MCN"), on June 6, 2019 and was given a choice of housing.  Declining a cell she considered to be insufficiently protective of her privacy, Beaulieu opted for placement in a housing pod with inmate Doane, a gang member.

Beginning in June 2019 and ending in September/October 2019, Beaulieu asserts that unit officers including Lt. Hill and Capt. Gary Burke refused her repeated requests for a transfer to a different MCN housing pod, made jokes about her grievances, and Capt. Burke told her that if she could "shut up for 3 weeks" he would consider moving her to a different housing pod.

## III. Harassment/Retaliation

### A. CCU D-reports

On dates in late 2018 and in 2019, while she remained a CCU inmate, a number of CCU officers charged Beaulieu with multiple

5

disciplinary offenses. Beaulieu asserts that Sgt. Robert Parent and the other first-shift CCU officers who wrote up most of the "D-reports" did so to retaliate against her for suing prison officials.

### B. PREA Investigations and Job Loss

Beaulieu asserts that, on September 23, 2019, MCN Lt. Hill and Cpl. Susca caused her and another inmate to be transferred to the Special Housing Unit ("SHU") in "Pending Administrative Review" ("PAR") status on a PREA sexual misconduct charge she asserts was false. Beaulieu asserts she was cleared of that (first) PREA charge and released back to MCN the next day. In the interim, Cpl. Susca had reassigned Beaulieu's MCN prison jobs to gang members and their friends.

About a week later, Lt. Hill provided the NHSP Investigations Department with unsigned inmate request slips that accused Beaulieu of conspiring with another inmate to engage in a sex act. Beaulieu asserts that on September 30, 2019, Lt. Hill charged her with a disciplinary offense arising from the PREA accusations. A (second) PREA investigation was initiated concerning those allegations, which resulted in Beaulieu's transfer back to SHU, in PAR status, on October 3,

2019.[2]

## **Claims**

The initial pleadings in this case (Doc. Nos. 1, 6, 7, 8, and 18) assert the following claims for relief under 42 U.S.C. § 1983:

1.  Defendants have violated Beaulieu's Fourth Amendment right not to be subjected to unreasonable searches, in that:

    a.  Cpl. Ryan Hyde forced Beaulieu to expose her breasts to the male COs strip-searching her, when he directed an unnamed CO to point a taser at Beaulieu to overcome her refusal to strip from the waist up in front of them; and

    b.  NHSP Major Jon Fouts, NHSP Warden Michelle Edmark, DOC Director of Safety and Security Christopher Kench, and DOC Commissioner Helen Hanks failed to ensure that female corrections officers conduct strip searches of Beaulieu from the waist up.

2.  Defendants violated Beaulieu's Eighth Amendment rights in that, with knowledge of the factors making Beaulieu more vulnerable to assault and the unit's history of inmate violence:

    a.  NHSP CO Seabron, Cpl. Christopher Bernstein, and Lt. Benjamin Carver were all failing to attend to their duties, when inmate Kevin Smith struck Beaulieu in the face on September 20, 2018 in the RTU.

    b.  Cpl. Josh Ellis and CO Glenn Nimoriski put Beaulieu in a CCU C-tier cell with known BOWW member James Merchant for three weeks, from November 9, 2018, until she was moved to B-tier on November 29, 2018.

---

[2]Beaulieu remains in SHU.  It is not clear whether the investigation and disciplinary charges have been resolved.

7

    c.    On December 5, 2018, CCU CO E. Bazile opened Beaulieu's B-tier cell door and released her to receive medications at the same time as her former cellmate, James Merchant, had been released into C-tier, leading to an encounter during which Merchant punched and kicked Beaulieu.

    d.    CCU officers Cpl. Eisman, CO Oyiri, and Lt. Dupuis heard, but did not respond to, Beaulieu's screams during Merchant's assault on December 5, 2018, for about five minutes, exposing Beaulieu to a substantial risk of serious harm.

    e.    After Beaulieu rejected an offer on June 8, 2019, to move into a cell in Medium Custody North that she considered to be insufficiently protective of her privacy:

        i.    Lt. Hill transferred Beaulieu into a housing pod that has a history of inmate violence, where Robert Doane, a known member of the violent inmate gang BOWW, was housed, and

        ii.    Between June 8, 2019 and September/October 2019, Lt. Hill, Capt. Gary Burke, and Cpl. Susca refused Beaulieu's requests for a transfer to a different cell or housing pod.

3.    In retaliation for Beaulieu's engagement in conduct protected by the First Amendment,

    a.    While Beaulieu was in Medium Custody North in October 2018, Sgt. Robert Parent charged Beaulieu with disciplinary offenses, which resulted in Beaulieu's transfer to a heightened custody unit;

    b.    Officers, including Sgt. Parent, Cpl. Ellis, CO Bazile, CO Nimoriski, CO Oyeri, and Lt. Troy Fontaine, charged Beaulieu with multiple disciplinary offenses in January 2019, which affected her custody level and her eligibility for parole;

    c.    Cpl. Ellis subjected Beaulieu to a false disciplinary charge on January 10, 2019, and a disciplinary conviction that Beaulieu successfully appealed through the grievance process;

    d.    Capt. Gary Burke, Lt. Phil Hill, and Cpl. Susca have taken adverse action against Beaulieu in that:

        i.    While Beaulieu was in MCN, Capt. Burke, Lt. Hill, and Cpl. Susca refused her requests for transfer to a different cell or housing pod from June 2019 through September 2019;

        ii.    Capt. Burke and Lt. Hill made fun of how Beaulieu characterized them in a February 2019 grievance; and

        iii.    Capt. Burke told Beaulieu sometime between June 2019 and September 2019 that if she could "shut up for 3 weeks" he would consider moving her to a different cell or housing pod.

    e.    Lt. Hill and Cpl. Susca caused a PREA investigation to be initiated against Beaulieu, based on information that they had received from inmates accusing Beaulieu of sexual misconduct, which resulted in Beaulieu's placement in SHU on PAR status September 23 and 24, 2019, and the loss of her inmate jobs on Medium Custody North;

    f.    Lt. Hill issued Beaulieu a disciplinary ticket on September 30, 2019, charging her with conspiring with another inmate to engage in a sex act, which caused Beaulieu to be transferred to SHU on PAR status on October 3, 2019, pending investigation of that disciplinary charge;

    g.    Cpl. Ellis charged Beaulieu with a disciplinary offense at an unspecified date in 2019, but did not charge inmates Robie and Wells, who had engaged in the same conduct with which Beaulieu was charged at the same time and place.

4.    Cpl. Susca violated Beaulieu's Fourteenth Amendment right to equal protection, in that Cpl. Susca took away Beaulieu's prison jobs in September 2019 and gave them to inmate gang members and their friends, because of Cpl. Susca's bias against gay people.

**Discussion**

I.  Preliminary Review

   A.  Standard

The court conducts a preliminary review of prisoner complaints filed by inmates seeking relief from government agents.  See LR 4.3(d)(1); see also 28 U.S.C. § 1915A.  In considering whether the complaint states a claim, the court determines whether, stripped of legal conclusions, and with all reasonable inferences construed in plaintiff's favor, the complaint contains "sufficient factual matter, accepted as true, to 'state a claim to relief'" upon which relief can be granted.  Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (citation omitted).  Claims may be dismissed, sua sponte, if the court lacks jurisdiction, a defendant is immune from the relief sought, or the complaint fails to state a claim upon which relief may be granted.  See 28 U.S.C. § 1915A(b); LR 4.3(d)(1)(A).

   B.  Fourth Amendment Strip Search (Claims 1(a) & 1(b))

By notices filed on November 15, 2019, Beaulieu has voluntarily dismissed the claims identified here as Claims 1(a) and 1(b), without prejudice, under Fed. R. Civ. P. 41(a)(1). Those claims are no longer part of this case, and they provide no grounds for granting any relief to Beaulieu.  The following

defendants should be dropped as parties: Cpl. Ryan Hyde, NHSP Major Jon Fouts, NHSP Warden Michelle Edmark, DOC Director of Safety and Security Christopher Kench, and DOC Commissioner Helen Hanks, as no claim remains in this case against them.

### C. Eighth Amendment Endangerment (Claim 2)

#### 1. Elements

"Not 'every injury suffered by one prisoner at the hands of another' . . . 'translates into constitutional liability.'" Lakin v. Barnhart, 758 F.3d 66, 70 (1st Cir. 2014) (quoting Farmer v. Brennan, 511 U.S. 825, 834 (1994)).

> Instead, a prison official violates an inmate's Eighth Amendment right against cruel and unusual punishment "based on a failure to prevent harm" to the inmate only under two circumstances: "the inmate must show that he is incarcerated under conditions posing a substantial risk of serious harm," and the prison official must have acted, or failed to act, with "deliberate indifference to inmate health or safety."

Lakin, 758 F.3d at 70 (quoting Farmer, 511 U.S. at 834). To act with deliberate indifference to health and safety, a prison "official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." Farmer, 511 U.S. at 837. Prison officials "who actually knew of a substantial risk to inmate health or safety may be found free from liability if they responded reasonably to the risk, even if the harm ultimately

11

was not averted." Id. at 844.

### 2. Inattention (Claims 2(a) and 2(c))

Beaulieu has alleged that defendant corrections officers, aware of Beaulieu's particular vulnerability to assault by other inmates, failed to perform their duties in both the RTU on September 20, 2018, and in the CCU on December 5, 2018. Beaulieu has specifically alleged that CO Seabron was in the breakroom, Cpl. Bernstein was sleeping on the job in view of the assault, and Lt. Carver was taking a lap around the floor when inmate Smith first chased and then struck Beaulieu in the face in the RTU, and that CO Bazile was on the phone and not paying attention when he opened Beaulieu's cell door, which allowed inmate Merchant to encounter and assault her.

The facts alleged as to those incidents, taken as true, indicate that the defendant officers' inattention to, or dereliction of, their duties of monitoring inmates under their supervision resulted in injuries to an inmate known to be vulnerable to assaults by other inmates. The allegations about the defendant officers' inattention and awareness of Beaulieu's vulnerability state Eighth Amendment deliberate indifference/endangerment claims upon which relief can be granted. In an Order issued this date, the court directs CO

Seabron, Cpl. Bernstein, and Lt. Carver to file an answer to Claim 2(a), and CO Bazile to file an answer to Claim 2(c).

### 3. Housing Placement (Claims 2(b) and 2(e))

By notices filed on November 15, 2019, Beaulieu has voluntarily dismissed without prejudice the housing placement endangerment claims numbered here as Claims 2(b), 2(e)(*i*), and 2(e)(*ii*). Those claims are no longer part of this case and are deemed to be voluntarily dismissed under Fed. R. Civ. P. 41(a)(1).

### 4. Delayed Response (Claim 2(d))

Beaulieu has alleged that CCU defendants Cpl. Eisman, CO Oyiri, and Lt. Dupuis were in a nearby office in the CCU when Merchant assaulted her on December 5, 2018, and that they heard her scream for about five minutes before they responded. The facts alleged by Beaulieu state a claim that those officers were deliberately indifferent to a known, substantial risk of serious harm, and failed to reasonably respond to that risk. In an Order issued this date, the court has directed Cpl. Eisman, CO Oyiri, and Lt. Dupuis, in their individual capacities, to file an answer in response to Claim 2(d).

D.  First Amendment Retaliation (Claim 3)

By notices filed on November 15, 2019, Beaulieu has voluntarily dismissed without prejudice the claims numbered in this case as Claim 3(a)-(g).  See Fed. R. Civ. P. 41(a)(1).  Claim 3 provides no grounds for granting any relief to Beaulieu.

E.  Equal Protection (Claim 4)

The Fourteenth Amendment Equal Protection Clause dictates "that 'similarly situated persons are to receive substantially similar treatment from their government.'" Kuperman v. Wrenn, 645 F.3d 69, 77 (1st Cir. 2011) (citation omitted).  To assert an equal protection claim, a plaintiff must state facts sufficient to show that, as compared to others similarly situated, the plaintiff was treated differently based on an improper consideration.  See id. at 78.

Stripped of speculation about Cpl. Susca's anti-gay motives for his actions, the Complaint alleges, in pertinent part that Cpl. Susca took away Beaulieu's inmate jobs and gave them to gang members or friends of gang members when Beaulieu was sent to SHU during the course of a PREA investigation.  Beaulieu has not pleaded facts showing, however, that Cpl. Susca handled the job assignments of heterosexual or non-transgender inmates differently, upon their transfers to SHU or the initiation of

PREA investigations against them. Without more, Beaulieu's allegations fail to show that Susca treated similarly-situated inmates differently on the basis of their sexual orientation or gender identity, or that Susca's alleged anti-gay bias played a role in the reassignment of Beaulieu's inmate jobs. Accordingly, the district judge should dismiss Claim 4.

### F.  Eleventh Amendment and Official Capacity

The Eleventh Amendment precludes official capacity suits against state employees for damages. See Davidson v. Howe, 749 F.3d 21, 27-28 (1st Cir. 2014). Accordingly, the district judge should dismiss all of the official capacity damages claims asserted in this action.

## II.  Motions to Amend (Doc. Nos. 6 and 18)

In conducting its preliminary review of Beaulieu's initial pleadings, this court has liberally construed those pleadings to include all of the factual allegations asserted in Document Nos. 6 and 18, as well as in Document Nos. 1, 7, and 8. The district judge should grant the (second) motion to amend, which seeks to add the factual allegations set forth in Document No. 18 to the initial pleadings in this case.

The district judge should grant in part and otherwise deny

the (first) motion to amend (Doc. No. 6). That motion should be granted to the extent the factual allegations and claims therein are construed to be a part of the initial pleadings. The district judge should otherwise deny the relief requested in that motion to amend, to the extent that it seeks relief that is inconsistent with the preliminary review of the pleadings, as set forth in this R&R and in the Orders issued with this R&R.

IV. Preliminary Injunction (Doc. Nos. 7 and 8)

A. Standard

"'A plaintiff seeking a preliminary injunction must establish that he is likely to succeed on the merits, that he is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in his favor, and that an injunction is in the public interest.'" Glossip v. Gross, 135 S. Ct. 2726, 2736 (2015) (citation omitted). The likelihood of success and irreparable harm are the factors that weigh most heavily in the analysis. See Esso Std. Oil Co. v. Monroig-Zayas, 445 F.3d 13, 18 (1st Cir. 2006); see also Voice of the Arab World, Inc. v. MDTV Med. News Now, Inc., 645 F.3d 26, 32 (1st Cir. 2011). The burden of proof is on the movant. See Esso Std. Oil Co., 445 F.3d at 18.

B.  Likelihood of Success on the Merits

Beaulieu initially alleged multiple instances of what she considered to be retaliatory conduct undertaken by DOC officers, and all of the claims that underlie her motions for preliminary injunctions are based on the First Amendment retaliation claims identified here as Claims 3(a)-(g).  In that Beaulieu has voluntarily dismissed each of those claims through the notices she filed on November 15, 2019, Beaulieu cannot presently demonstrate a likelihood of success on the merits of any of those claims in this case.  The district judge should thus deny the motions for preliminary injunctive relief (Doc. Nos. 7, 8).

D.  Irreparable Harm

"Irreparable harm most often exists where a party has no adequate remedy at law."  Charlesbank Equity Fund II, Ltd. P'ship v. Blinds To Go, Inc., 370 F.3d 151, 162 (1st Cir. 2004).  "A finding of irreparable harm must be grounded on something more than conjecture, surmise, or a party's unsubstantiated fears of what the future may have in store."  Id.

Beaulieu points to no non-speculative harm that is likely to result if the injunctions she seeks are not issued now.  Accordingly, the district judge should deny Beaulieu's motions for preliminary injunctions (Doc. Nos. 7, 8), without prejudice

to her ability to file a new motion if: a change in her circumstances warrants such relief, and she can show both irreparable harm and a likelihood of success on the claims that underlie that motion.

## Conclusion

For the foregoing reasons, the magistrate judge recommends the following:

    1.   The district judge should grant in part and deny in part Beaulieu's (first) motion to amend (Doc. No. 6). That motion should be granted to the extent the factual allegations and claims in Document No. 6 and in the exhibits to that filing are construed to be part of the initial pleadings in this matter, subject to the court's preliminary review. The motion should be otherwise denied, to the extent it seeks to join any new claims and defendants in a manner that is inconsistent with this R&R, the Orders issued simultaneously with this R&R, and the district judge's Order on this R&R.

    2.   The district judge should grant the motion to correct/amend the Complaint (Doc. No. 18), by finding that the factual allegations in that motion are part of the initial pleadings in this matter.

    3.   The district judge should deny without prejudice Beaulieu's motions for a preliminary injunction (Doc. Nos. 7, 8).

    4.   Claims 1(a), 1(b), 2(b), 2(e)(*i*), 2(e)(*ii*), and 3 have been voluntarily dismissed without prejudice under Fed. R. Civ. P. 41(a)(1). Claim 2(a), 2(c), and 2(d) are the subject of an Amended Service Order issued this date. For reasons stated in this Report and Recommendation, Claim 4 and all of the remaining claims asserted in Doc. Nos. 1, 6, 7, 8, and 18 should be dismissed.

    5.   With the exception of NHSP CO FNU Seabron; NHSP

CO Christopher Berntsen or Bernstein; NHSP Lt. Benjamin Carver; NHSP CO E. Bazile; NHSP Cpl. FNU Eisman; NHSP CO FNU Oyiri; and NHSP Lt. FNU Dupuis or Dupris, the district judge should drop from this action, and not join, any of the remaining defendants named in Doc. Nos. 1, 6, 7, 8, and 18, as Beaulieu has not stated any claim that may proceed against them in this action.

6. The district judge should dismiss all of Beaulieu's claims for damages asserted against any party in his or her official capacity.

Any objections to this R&R must be filed within fourteen days of receipt of this notice. See Fed. R. Civ. P. 72(b)(2). The fourteen-day period may be extended upon motion. Failure to file objections within the specified time waives the right to appeal the district court's order. See Santos-Santos v. Torres-Centeno, 842 F.3d 163, 168 (1st Cir. 2016).

_____
Andrea K. Johnstone
United States Magistrate Judge

November 19, 2019

cc: Christopher (Crystal) Beaulieu, pro se